## No. 10,922.

### ALEXANDER BRELET VS. JAMES MULLEN.

It is universally held that a criminal proceeding having been brought or prosecuted maliciously, and without probable cause, affords, when terminated, the basis of an action in damages for malicious prosecution against the one bringing or prosecuting such proceeding.

In order that a plaintiff may maintain such an action, *three* things must concur: 1. The motive must have been malicious; 2. The suit must have been instituted without *any* probable cause; 3. The suit must have terminated after trial of its merits, in favor of the accused.

It is malice, composed of bad feeling and knowledge of the want of probable cause, which creates liability.

Public interest and a proper administration of justice require that such actions should not be maintained except in *clear* cases.

Courts will not inflict damages on a party resorting in good faith to law for the protection of his rights, rather than taking the chance of a recourse to arms or tamely submitting to a usurper·

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*Buck, Dinkelspiel & Hart* for Plaintiff and Appellee:

1. The principle that proof of both want of probable cause and malice must concur in suits for damages for malicious prosecution has its strictest application only in cases where the prosecution was of a public character and into which there entered none of the elements of private interest.

Brelet vs. Mullen.

2. Malice is presumed where there is a total want of probable cause. 33 An. 392; 15 An. 421; 9 An. 219; 4 An. 377.

3. Where there is a total want of probable cause and where a party acts from motives of private interest, the advice of counsel will not exempt him from liability. Glascock vs. Bridges, 15 An. 672.

4. Probable cause means reasonable ground for belief, supported by circumstances sufficiently strong to warrant a cautious man in the belief that the accused is guilty of the offence charged.

The prosecutor may have been honest, and may have actually believed in the truth of the affidavit made by him, and still be liable for damages, if he acted without reasonable cause. Doux vs. Lieux, 33 An. 392.

5. The use of criminal process to enforce civil claims is an intolerable abuse, even where the claim exists, but if the claim be unfounded, it shows a reckless ness of the rights and character of others which amounts to malice. 6 An. 577.

6. In such cases the *quantum* of damage is left to the discretion of the court; and where it is shown that a man far advanced in years, with a family consisting of a wife and many children, has been subjected to the indignity of a groundless arrest, upon a charge which, if true, amounted to a felony, and which charge was ostentatiously published in the newspapers under sensational headlines, two hundred and fifty dollars allowed by the court *a qua* is an inadequate compensation, although there is no proof of actual pecuniary loss except the attorney's fee for defending the plaintiff in the criminal prosecution.

*W. R. Richardson* and *James Timony,* for Defendant and Appellant, cited: 34 An. 246; 35 Ill. 504; 98 U. S. 195.

The opinion of the court was delivered by

BERMUDEZ, C. J. This is a suit in damages for malicious arrest and prosecution, for $5000.

The petition contains the usual charges of malicious arrest and prosecution without probable cause, discharged after trial and injury sustained; and the answer is a denegation of the averments.

From a judgment for $250 by the judge the defendant appeals, and the plaintiff, on appeal, asks an increase to the amount originally claimed.

It appears that in 1883 a city ordinance was passed, in pursuance of which the side of the revetment levee, at the West End, not covered by grants to the New Orleans City Railroad Company, was divided into lots, and leases were made to various parties. One Carroll, who obtained one of the leases or permits to occupy, placed some improvements on his spot, subsequently selling his rights thereto to one Minnie Wilson, who afterward, on the 10th of March,

1890, by public act, sold or transferred hers to Mary Boylan, the wife of defendant, including "buildings and improvements," for $600, acknowledged to have been *paid*.

Under the impression that a certain structure existing between the revetment levee and the shore proper and used as a "necessary," or a place of convenience for ladies and children, had been erected upon the spot, the permit to occupy which had been purchased by his wife, Mullen, the defendant, thought he had a right to take possession of it for her. Finding it locked, and informed that it was in the possession or under the control of the railroad company, he went to the Mayor's office to ascertain how the matter stood.

The title to the spot was exhibited to the Mayor, who, after hearing Mullen's complaint, compared it with the plan or map of West End, and found that it referred to lot No. 9 upon it. He then told Mullen the piece was *his*, meaning his wife's, no doubt, and to go and take possession of it.

Thereupon Mullen, finding the building closed, entered it and took possession of it, placing obstructions within to prevent all entering into it.

*Subsequently* a woman who had the key of the building or structure, finding that the door had been barred, complained of her inability to enter, to the plaintiff, Brelet, who is a police officer commissioned by the Mayor, but paid by the railroad company at West End, and put on duty at that place. This authority broke into the structure, removed the obstacles and placed the woman in possession.

Subsequently Mullen remonstrated with the person who held the key, who directed him to complain to the company, if he had any cause for grievance.

Mullen did not follow the advice, but went again to the Mayor, stating what had occurred. The result of the interview was, that the officer was sent for by the Mayor, who stated the complaint against him and advised him on the subject favorably to Mr. Mullen's pretensions. The officer denies that the Mayor told him not to break into the premises; but he states that had he *done* so, and had the railroad company directed him otherwise, to the reverse, he would rather have obeyed the latter.

Be this as it may, the fact is, that, after Mullen had placed other obstructions, Brelet broke into and entered the premises, putting

the woman in possession again of it, thus championing, at his peril, the presumed rights of others.

Thereupon Mullen reported the fact once more to the Mayor, who told him to take possession again and to make a charge against whomever would interfere with the place.

Then it was that Mullen went before the Recorder, made a charge against Brelet for *breaking and entering*, upon which the latter was nominally arrested, taken to the Recorder, who released him without bail.

The matter came up before the magistrate, who dismissed the charge. Heard as a witness, he said that he did so because the case involved a title to property, which he declined to go into.

It appears that some publicity was given to the arrest of Brelet and that his discharge was also announced.

Under these circumstances, $5,000 damages are claimed.

" It is universally held, that a criminal proceeding having been brought or prosecuted maliciously and without probable cause, affords, when terminated, the basis of an action of malicious prosecution against the one so bringing or prosecuting such proceeding." A. and E. Encyclopedia, Vo. Malicious prosecution, p. 25, Vol. 14.

" In order that the plaintiff may maintain this action, *three* things must concur:

" 1. The motive of the party instituting or prosecuting the suit or proceeding must have been malicious.

" 2. The suit or proceeding complained of must have been instituted without any probable cause therefor.

" 3. The suit must be terminated." Ib. 17.

A thoughtful consideration of the facts of this cause does not impress the mind with the conclusion that Mullen acted with malice and without probable cause. The balance of probabilities rather preponderates the other way.

His whole course indicates that, as a faithful husband, anxious of protecting the interests of his wife, he did all in good faith what ordinary prudence and discretion could suggest.

He really thought that the structure in question had been put up on the lot, the right of occupancy of which his wife had purchased from one, who indirectly held it from the city, who was a sort of warrantor.

Brelet vs. Mullen.

Before using violence or even taking any legal step against the party who had broken into it and placed another person in possession of it, Mullen thought it prudent to go to the City Hall and ascertain from the officer representing the city as to his wife's rights to the occupancy of the structure.

After comparing the act of sale with the map of West End, the Mayor told him the building was on the spot and to take possession of it.

He did so, but after the structure had been again broken into he returned to the Mayor and on his suggestion made the charge against Brelet, the dismissal of which caused the bringing of the present suit.

There is nothing to show any actual or constructive malice in any of Mullen's acts and doings in the premises.

Under the circumstances he had probable cause. If it be true that the structure is on the spot and that Mrs. Mullen acquired the right of occupying and enjoying the same, it is clear that she had a good cause to have any one arrested who interfered with it, the more so, as the Mayor, who is the authority who has control of the police force of the city, said and advised the bringing of the charge. The inquiry of the Mayor and, his suggestions are perhaps better than legal advice from counsel, learned in the law, in a case of this description.

It may be asked further, whether the prosecution has terminated, so as to justify a suit for malicious arrest, by one who had no authority to intermeddle as he did.

The merits of the charge were not inquired into and the *dismissal* of the proceeding does not amount to an acquittal. The recorder says that he would not go into the question of ownership and discharged the accused. Another accusation could be brought against him were it in time and did the facts warrant another prosecution.

In a kindred recent case in which the owners of two contiguous lots quarreled as to the spot on which a division fence should be placed, surveyors disagreeing, and the one caused the arrest and trial of the other, who was subsequently discharged, a suit in damages was brought, for malicious prosecution, this court had occasion to review somewhat extensively the law applicable to cases of this character and it declined to allow damages.

It held that it is not always that malice and want of probable cause can be inferred from the dismissal of a charge against an accused before a committing magistrate, and that if the discharge be *prima facie* evidence, the presumption may be rebutted.

It also held, that in the absence of facts showing malice and want of probable cause, which are essential ingredients, no recovery can be had.

It is the malice composed of bad feeling and the knowledge of the want of probable and just cause which create liability. Public interest and a proper administration of justice require that actions for malicious prosecutions should not be maintained without *clear* proof of malice and want of probable cause.

Courts can not inflict damages on a party for resorting in good faith to the law for the protection of his rights, rather than taking the chances of a recourse to arms or tamely abandoning the field to a usurper. Girotis vs. Graham, 41 An. 511; See also 15 L. 278; 12 An. 53; 11 An. 419; 33 An. 915; 36 An. 92, 102; 40 An. 374; 41 An. 301; 42 An. 32.

The circumstances of this case do not show malice in the defendant and a ¡want of probable cause and do not warrant the infliction of damages on him.

It is therefore ordered and decreed that the judgment appealed from be avoided and reversed and that there now be judgment rejecting plaintiff's demand and relieving defendant from the claim; plaintiff to pay costs in both courts.