(109 So. 31)

No. 25549.

## MULLEN v. GAUSE.

(May 3, 1926. Rehearing Denied May 31, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Infants** ⬤═88—Minors; minor, who attained majority during pendency of appeal and continued prosecution of suit in own right, held to have cured lack of authority, if any, of mother who brought suit in his behalf (Civ. Code, art. 221, as amended by Act 252 of 1920).

Minor, who attained majority during pendency of appeal and continued prosecution of suit in own right, *held* to have cured lack of authority, if any, under Civ. Code, art. 221, as amended by Act 252 of 1920, of mother who brought suit in his behalf.

2. **Trespass** ⬤═78—Law does not denounce trespass on personal property (Rev. St. §§ 817. 819; Act No. 85 of 1890; Act No. 14 of 1882; Act No. 162 of 1910).

Law does not denounce, as such, trespass on personal property, since Rev. St. §§ 817, 819. Act No. 85 of 1890, Act No. 14 of 1882, and Act No. 162 of 1910 pertain to real property.

3. **Criminal law** ⬤═252(2).

Affidavit preferring charge need not be drawn with technical accuracy required of indictments.

4. **Malicious prosecution** ⬤═26.

To recover damages for malicious prosecution, it must appear that prosecution was instituted maliciously.

5. **Malicious prosecution** ⬤═31—Buyer of boats from father acted maliciously in having son, in possession under bona fide belief they belonged to mother, arrested second time for trespass.

Where son took possession of certain boats under bona fide belief that they belonged to mother, one, who bought boats from father, and who was in possession of all facts, *held* to have acted maliciously in having him arrested for trespass after the justice had once discharged him.

6. **Malicious prosecution** ⬤═21(2)—Defendant held to have acted maliciously in causing arrest for larceny to force plaintiff to desist from suing for arrest for trespass, notwithstanding advice of counsel.

Defendant *held* to have acted maliciously in having plaintiff arrested for larceny solely to force him to desist from suing defendant for damages for causing previous arrest for trespass, notwithstanding advice of counsel, where it was evident that such advice would not have been given, had defendant disclosed all facts of which he had knowledge.

7. **Malicious prosecution** ⬤═21(2)—Advice of counsel as defense, in action for malicious prosecution, must be given after full disclosure, and acted on honestly.

For advice of counsel to serve as defense, in action for malicious prosecution, it must be given after full disclosure of all facts, made after reasonable diligence to ascertain them, and acted on honestly and in good faith.

8. **Malicious prosecution** ⊙—69—**$1,000 damages for malicious prosecution held excessive and reduced to $500.**

$1,000 damages for malicious prosecution *held* excessive and reduced to $500, where buyer of boats from father maliciously had son arrested, first, for taking possession under bona fide belief that they belonged to mother, and, again, to force him to desist from suit for damages.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Action by Sam Mullen, brought in his behalf by his mother, against W. Edward Gause, in which plaintiff continued prosecution of the suit in his own right after attaining his majority. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

L. V. Cooley, Jr., of Slidell, for appellant.

S. W. Provensal, of New Orleans, for appellee.

OVERTON, J. This is a suit to recover judgment for $10,050 damages for malicious prosecution. Plaintiff was a minor, about 19 years of age, when the suit was filed, and for that reason it was brought in his behalf by his mother, who alleges that she is plaintiff's natural tutrix, duly authorized by order of court, to represent him.

Before the suit was filed plaintiff obtained an order of court, reading as follows, to wit:

"It appearing to the court that S. B. Mullen, father of the minor, Sam Mullen, is absent from the state of Louisiana, and has in fact deserted his family, it is ordered that Mrs. Cora Mullen, mother of the minor, Sam Mullen, be and she is hereby authorized to represent the said minor, Sam Mullen, in these proceedings."

One of the first steps taken by defendant in his defense was to except to the suit on the ground that neither the petition nor the foregoing order of court attached thereto discloses any authority in plaintiff's mother to bring and prosecute this suit. The exception is based on the ground that plaintiff's father is still alive, was not even separated from bed and board from his wife, and was not under interdiction, or absent, when the suit was filed. The law upon which the exception is founded is article 221 of the Civil Code, as amended by Act 252 of 1920, which provides that—

"The father is, during the marriage, administrator of the estate of his minor children, and the mother in case of his interdiction or absence."

Hence the position is taken by defendant that the father should have represented plaintiff, and not the mother.

[1] We find it unnecessary to decide whether plaintiff's mother was the proper person to represent him, and, if she was, which question is not raised, whether she had the right to do so as his natural tutrix. We so find, for the reason that, during the pendency of this appeal, plaintiff attained his majority, and, since attaining it, he has appeared in this court, and obtained an order authorizing him to stand in judgment herein, as a person sui juris, and has continued the prosecution of the suit in his own right. By so doing, he has ratified his mother's action in bringing the suit, and has cured whatever defect of want of authority to bring it that may have existed.

On the merits of the case, the record discloses the following facts:

S. B. Mullen, the father of plaintiff, operated a ferry on Pearl river at Indian Village. The boats used by him in operating the ferry consisted of a gasoline boat, named the "Red Wing," and a pontoon flat boat.

Mullen had some disagreement with his wife, deserted her and his children, and left the vicinity in which he lived. Before leaving, he executed an act of sale, transferring the Red Wing and the flat boat to W. E. Gause, the defendant herein, but reserving to himself the right to redeem the property in six months by paying the principal and in-

terest, in the event Gause did not sell the property in the meantime.

About the time Mullen deserted his wife, she telegraphed her son, the plaintiff herein, who was then at work in Lake Charles, La., to return at once and take charge of the ferry. Plaintiff reached his mother's home at Slidell, La., on April 11, 1921. He did not go to the ferry on the day of his arrival, but on the night of the next day he was informed by T. J. Eddins that an automobile wished to cross on the ferry early the next morning, and in the course of the conversation that ensued Eddins told plaintiff that he thought his father had made some disposition of the ferry, and that it would be advisable for him to look into the matter. On the same night plaintiff and his younger brother left for the ferry; plaintiff taking with him his shotgun, as was his custom in going there.

Not long after plaintiff had reached Indian Village, he and his brother went to a houseboat on the river to visit some acquaintances. While there plaintiff saw Ed Corcoran, an old negro, and, having reason at that time to believe that Corcoran was claiming the ferry, questioned him about it. Corcoran told plaintiff that he had bought the ferry privilege from the latter's father, defendant advancing the $50 required for that purpose, and that he had bought the two boats from defendant wholly on terms of credit. Apparently, this was the first knowledge that plaintiff had of the transfer to defendant, which took place, it seems, on the same day that this conversation occurred. In the course of the conversation, plaintiff told Corcoran that his mother had put her money in the boats; that the boats belonged to her; that his father had no right to sell them; and laid claim to the boats on behalf of his mother. During the conversation, plaintiff spoke roughly to Corcoran, though it does not appear that he made any threats against him. Plaintiff says that the conversation ended on Corcoran's suggesting that plaintiff and his brother should

cross the automobile the next morning and that plaintiff should go to Slidell without delay to straighten matters. Corcoran says that the conversation ended by his leaving, when he found that he was unable to satisfy plaintiff and his brother that they had no right to the possession of the boats.

On the next morning, before daybreak, plaintiff left for Slidell to investigate the situation and straighten matters pertaining to the ferry. His brother remained at Indian Village, ferried the automobile from Logtown to that village, and collected the toll for doing so. About the time that plaintiff left for Slidell, Corcoran wrote a note to defendant, advising him that plaintiff and his brother were "refusing to turn the ferry aloose in a most bulldosing way;" that they were there the night before, claiming that a car was at Logtown which they intended going after; that he expected them to give some trouble; and that he told them that their father had sold out to him, but that they would not listen to that.

Corcoran gave this note to Simon Porter, who was going to Slidell that morning, and requested Porter to deliver it to defendant, and to tell him to come at once, as plaintiff and his brother were at Indian Village; that they had a gun; and that he was having trouble with them in connection with the ferry. Porter delivered the note and message to defendant.

When defendant received the note and the message, he went before a justice of the peace and made an affidavit in which he charged plaintiff and his brother with having trespassed by taking without consent the gasoline boat, "Red Wing," and the flat boat, from the landing at Indian Village. The justice of the peace issued a warrant on the affidavit, and placed it in the hands of the constable.

Plaintiff had reached Slidell when the warrant issued for his arrest. The constable and defendant started out to execute the warrant. Before leaving Slidell, they saw plaintiff sitting in front of a restaurant, and arrested

him. They had plaintiff get into the vehicle in which they were riding, and then proceeded on their way to Indian Village to arrest his brother. While on their way there, they met plaintiff's brother returning to Slidell in the automobile which he had gone to Indian Village to ferry across from Logtown. The automobile was stopped, and plaintiff's brother was arrested, and taken into the automobile with defendant and the constable.

While plaintiff and his brother were under arrest, the former advised defendant fully why possession had been taken of the boats, telling him that they considered that the boats belonged to their mother, and that their father had no right to sell them. In the course of the conversation, and after plaintiff and his brother had been under arrest for a short while, defendant told them that he felt sorry for them, and if they would promise him not to interfere with the ferry again that he would withdraw the charge, and would have them released. Plaintiff and his brother promised not to interfere again. The charge was withdrawn, and plaintiff and his brother were released before they reached the jail. On the same day, although they had not again interfered with the ferry, the constable, acting under instructions from defendant, and apparently under the charge that had been withdrawn, arrested plaintiff and his brother again, and put them in jail. After they had been incarcerated for about an hour, they were released on an order, issued by the justice of the peace, apparently because there was no charge pending against them.

When plaintiff and his brother were released, the former consulted an attorney and through him mailed a letter to defendant, claiming damages for false arrest, and asking for an adjustment of the claim. Defendant, on receiving this letter, went to an attorney to consult him about the matter, and on the statement made, the attorney advised him that it would be proper to have plaintiff and his brother arrested for grand larceny for stealing the boats, and for petit larceny for stealing the toll collected for crossing the automobile. Defendant then made affidavit against plaintiff and his brother, preferring these charges against them. Plaintiff and his brother were arrested, and, pending the giving of bail, were confined in jail for three or four hours. They succeeded in giving bond at the expiration of that time, and were released. Later plaintiff was given a preliminary trial, and was discharged.

After plaintiff was discharged, the present suit was brought for him by his mother, as stated above, for malicious prosecution. The suit is based on the three arrests of plaintiff, which defendant caused to be made. It is alleged that these arrests were made without probable cause and with malice. The defense is substantially a denial that the arrests were so made.

[2-4] The first arrest was made apparently for trespass. It is so designated in the record and in the briefs. While our law denounces as crimes or misdemeanors certain trespasses on real property (sections 817, 819 R. S.; Act 85 of 1890; Act 14 of 1882; Act 162 of 1910), yet it does not denounce, as such, trespasses on personal property, or, at least, there is no statute sufficiently broad to include the trespass here charged. The charge first preferred is more akin to larceny than it is to any other offense denounced by our law, and since an affidavit preferring a charge need not be drawn with that technical accuracy required in indictments, the charge first preferred, though not so designated, may be considered as a charge of larceny, for larceny includes a trespass on the property. However, whether we view the first affidavit as charging an offense unknown to our law or as charging larceny, and as having been made without probable cause, the record satisfies us fully that defendant made the affidavit and caused the arrest to be made with-

out malice, and since, in order to enable a plaintiff to recover damages for malicious prosecution, it must appear, among other things, that the prosecution was instituted maliciously, we are of the opinion that, had the matter ended here, plaintiff would not be entitled to damages. McCormick v. Conway, 12 La. Ann. 53; Girot v. Graham, 41 La. Ann. 511, 6 So. 815; Brelet v. Mullen, 44 La. Ann. 194, 10 So. 865.

[5] But the matter did not end there, for, after plaintiff had been discharged at the request of defendant, the latter again put the machinery of the law in motion against him by causing his arrest the second time. When defendant caused the second arrest, he was in possession of all of the facts, and should have known that they did not justify a prosecution, under our law, for trespass, and that, as possession was taken of the boats under a bona fide belief entertained by plaintiff that they belonged to his mother, who had sent for him to operate the ferry, the facts did not show larceny. 36 C. J. p. 764, § 105. In our view, defendant not only acted without probable cause in having defendant arrested the second time, but acted without color of right, and his action in doing so showed a total disregard of plaintiff's right, so much so as to indicate an intention to oppress him; in other words, defendant acted in this instance maliciously.

[6] Nor, as we have seen, did the matter end with the second arrest, for when plaintiff was released on the order of the justice of the peace from this arrest, and after defendant had received plaintiff's letter demanding damages, he again caused plaintiff to be arrested, this time specifically for grand and petit larceny. When he caused this arrest to be made, he was in possession of all the material facts pertaining to the case as he was when he caused the second arrest to be made, and should have known, and we think did know, that possession was taken of the boats, not with the felonious intent to steal, but under a bona fide belief, held by plaintiff and his brother, that their mother was in fact the owner of the boats, and that she had a right to their possession. We think that defendant not only had no probable cause to have this arrest made, and thereby set in motion once more the criminal machinery against plaintiff, but we think that he acted maliciously in doing so. In fact, when asked why he caused the arrest to be made, he replied substantially that he did so, because plaintiff had made demand on him for damages, or, in other words, because plaintiff was threatening him with a damage suit. We may add that our appreciation of the evidence, as a whole, forces upon us the conclusion that defendant was prompted solely in causing this arrest to be made, not by a desire to enforce the law, but with the intention of forcing plaintiff, by means of oppression, to desist from suing him for damages.

[7] But defendant contends that in causing the third arrest to be made he acted under the advice of counsel. However, for the advice of counsel to serve as a defense, it not only must be given after a full disclosure of all the facts of which the one causing the arrest to be made had knowledge, after such person has exercised reasonable diligence to ascertain them, but the advice must have been acted upon honestly and in good faith. Gould v. Gardner, Sager & Co., 8 La. Ann. 11; Sandoz v. Veazie, 106 La. 202, 30 So. 767; Hammar v. Atkins, 124 La. 897, 50 So. 787; Dedebant v. Maestri, 134 La. 366, 64 So. 142; 38 C. J. p. 427, § 72. Had defendant advised his counsel that plaintiff and his brother took possession of the boats while under the belief that their mother was the owner of them, of which fact defendant was then in possession, but which it seems clear to us he did not communicate to his counsel, we feel safe in saying he would not have been advised to make the affidavit charging larceny. Nor do we

think that he would have received the advice he did, had he advised his counsel that he desired to make the affidavit to frighten plaintiff, or his mother, into not bringing a suit against him for damages. Under these circumstances we are not of the opinion that the advice of counsel constitutes a valid defense.

[8] The trial court thought that plaintiff was entitled to damages for the last two arrests. In this, we think that the court is correct. However, we think that the amount allowed by the trial court, to wit, $1,000, is. under all of the circumstances of the case, excessive. We think that the amount should be reduced to $500.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof from $1,000 to $500, and, as thus amended, it is affirmed; appellee to pay the costs of this appeal.