No. 4051

Second Circuit

NELMS ET AL. v. BOSWELL

(July 16, 1931. Opinion and Decree.)
(August 12, 1931. Rehearing Refused.)

M. L. Dismukes, of Natchitoches, attorney for plaintiffs, appellants.

Boone & Boone, of Many, attorneys for defendant, appellee.

TALIAFERRO, J. This suit was instituted by Mrs. Mary Nelms, surviving widow of Jerry L. Nelms, deceased, individually and as natural tutrix of her minor children, viz., Zella Nelms, Ella Nelms, Burland Nelms, and Mabry Nelms, issue of her marriage to deceased, and by Edgar Nelms and Mrs. Bessie Honeycutt, wife of Leo Honeycutt, major heirs and children of deceased and his said widow, against Grover C. Boswell, to recover the sum of $15,000 damages alleged to have been sustained by them on account of the killing of their said husband and father by defendant's automobile, December 5, 1929, while negligently and carelessly operated by defendant's minor son, Palmer Boswell.

Plaintiffs allege that deceased had worked at an oil well, near Zwolle, in Sabine parish, the day he was killed, and when injured by the collision of defendant's car with his own, on the Many-Robeline gravel highway, he was returning to his home in or near Robeline; that the car of deceased, a Ford touring automobile, was going easterly in the direction of Robeline, and the car of defendant, a Chevrolet Six sedan, was going westerly in the direction of Many; that the car of defendant was being driven at a high rate of speed, about 60 miles per hour, as it approached deceased's car, and realizing the danger created by the reckless and careless manner in which said car was being driven, deceased, endeavoring to avoid the danger and escape a collision, drove his own car to the (his) right side of the highway, near to the drain ditch, and brought it to a complete, or near complete, stop; but this effort was vain, as defendant's car, operated and driven as aforesaid, ran into and wrecked the car of deceased and inflicted injury to him of which he died within a very short time.

Defendant admits that his minor son was driving his car when it collided with the car of Jerry L. Nelms, deceased, and that said son was on an errand for him (defendant). All other allegations of fact in plaintiff's petition are denied.

Defendant further avers that the collision that caused the death of said Nelms was due solely to his own carelessness and negligence, in that he left his side of the highway, turned his car lights into the face of defendant's son, and ran his own car into that of defendant, driven by said Palmer Boswell; that said son was driving on his side of the road at a slow rate of speed; but if said Palmer Boswell was in any manner negligent the said Nelms, who was drinking, was guilty of such contributory negligence as was the proximate cause of said collision and his death.

The district judge rejected plaintiffs' demand and dismissed their suit. They prosecute appeal from this judgment.

The evidence establishes that deceased and two co-laborers, viz., Marshall Bryant and Owen Dillard, were en route to Robeline from the scene of their labor, near Zwolle, in the Ford touring car of de-

ceased, and were within one-fourth of a mile of Fort Jesup, when the accident occurred, about 7 o'clock p. m. Defendant's car, driven by his son, was moving in the opposite (westerly) direction. The car of deceased was a 1924 model, while that of defendant was new and twice as heavy as that of deceased. After the collision the Ford car was pointing diagonally back towards Many with the hub of left rear wheel (that wheel and both front wheels having been crushed) in the roadside ditch and its right rear wheel on the edge of the highway. ·In other words, the position of this car, as result of the impact, was virtually reversed. Defendant's car stopped within a few feet of the Ford car, about the center of, and diagonally across, the road. The two cars were so located after the collision as to interfere with traffic until the Chevrolet was moved. The left front wheel of defendant's car was destroyed, left fender badly injured, and other damages inflicted to that side of the car, while the Ford was virtually demolished. Its front was mashed in and left side stripped. Nelms and Bryant occupied the front seat and Dillard the rear seat of deceased's car. Nelms was immediately removed to a sanitarium in Natchitoches and died within an hour after arriving there.

Bryant and Dillard testified as witnesses on the trial of the case. Their testimony with respect to the circumstances of the collision is practically the same and is as follows: That defendant's car was first seen by them when it emerged into view over a rise in the road about 100 yards ahead of them and it proceeded down a grade in their direction at a rate of speed between 45 and 60 miles per hour; that the car was zigzagging over the road with lights on; that when Nelms realized the reckless manner in which the approaching car was being driven, he "pulled" his car to the right side of the road and brought it to a near stop, and at this juncture and while thus situated defendant's car ran into Nelms' car. Bryant testified that when he realized a collision was imminent he attempted to get out of the car but was not successful. He says he was thrown some 15 feet into the ditch, while Dillard was hurled through the car's top onto the road. Nelms, who was driving, remained in his seat, but was mortally wounded by the impact and was knocked unconscious. His left arm was broken in two places, a gash on the head, left leg broken, three ribs broken and stuck into the lungs, and base of skull probably fractured.

Within a short distance of the spot where the accident happened there is a crossroad. Near the intersection of the roads, on south side, at time of the tragedy, lived Walter Stoker with his family. The night of the tragedy they were expecting Mrs. Stoker's brother to stop by and see them. Mr. Stoker testified that he saw the car of deceased as it approached, and slowed down near this crossing and for the moment assumed the car was being driven by his brother-in-law and would turn into the road to his residence; that this car passed the roads' intersection a very short distance, had almost stopped, when he heard the noise of the collision; he did not have an unobstructed view of defendant's car as it approached the place of the accident, but could tell it was moving at a rapid rate of speed. This witness immediately went to the scene of the accident and as quickly as it could be done placed Nelms in a truck and with others carried him to the sanitarium. His testimony is corroborated

by that of his wife with respect to the movement of the Ford car in front of their residence to the moment of the collision.

Palmer Boswell testified that he had been to Ft. Jesup and was returning to his father's home in Many when the accident occurred; that he was on his side of the road and slowed down to about 25 miles per hour as he approached deceased's car and thought he would pass it "until he got nearly on it and it seemed like it turned straight into me" (quoting his own language). That it seemed to him the left front wheel of both cars locked. He states that the Ford car was traveling about 25 miles per hour, and he did not observe that it slowed down as it neared him. On cross-examination this witness stated that the car of deceased kept its side of the road until within 4 or 5 yards of his car and then deliberately cut across the road and caused the collision; that he did not try to stop his car; that he was 16 years old at date of the collision, had been driving his father's cars for two or three years, and this was the first accident he had had. That immediately after the accident he went to a filling station not far distant and gave notice of the trouble, then assisted in starting the injured man to the sanitarium, and then phoned to his father about the accident. His version of the accident and its cause is not reasonable, nor is it borne out by the weight of evidence.

Defendant testified that after his son phoned him about the accident he informed several of the kinsmen of Mr. Nelms by phone and then got a deputy sheriff to drive him to the scene of the accident, five and one-half miles; that before he arrived the cars had been moved from their respective positions after the collision, but that he, with others, examined the face of the road with a lighted lantern to ascertain exactly the spot where the cars came in contact, their line of travel before the collision, and reaction to the impact, and had no difficulty in doing this although he admitted the weather was bad, the road was damp, and cars had passed the scene, going both ways, before this examination was made. He reached the conclusion, from this examination, based upon physical signs satisfactory to himself, that the collision took place on his son's side of the highway, and his conclusion on this point, he states, is confirmed by the location of the shattered glass of the windshields of both cars being found largely north of the center of the road at the spot he theorizes the cars came together. He reached the scene between 40 and 60 minutes after the accident. With respect to the location of the glass from both cars, it is shown that immediately after the Boswell car was removed from the center of the highway, before Nelms was started to the sanitarium, and before defendant arrived upon the scene, this glass was kicked by the witness Riley Stoker over the road and scattered more than it was before. Stoker states that the bulk of the glass was on Nelms' side of the road before he scattered it. That he scattered it because he did not want to drive his truck over a pile of it. His evidence is corroborated by the witnesses Owen Dillard and Walter and Wallace Stoker.

Defendant and his son prepared a diagram of the locus in quo, constructed upon the physical evidences viewed by him and, we imagine, to a material extent, upon the son's version of the accident, which was filed in evidence. We have not the benefit of this diagram, as it is not incorporated in the record before us.

Defendant is positive he traced the tracks of Nelms' car from a bridge not far west of the place of collision to where it ran

into his car, while other witnesses are positive there is no bridge within one-half mile of the place of the accident.

Very soon after Mr. Nelms was carried to the sanitarium, and while people were viewing the scene of the wreckage, Messrs. Harold. and Elden Dees drove up. The latter examined the road about the scene and states. that with the aid of a flash light he was able to follow the tracks of Nelms' car from the bridge to. the point of collision; that the tracks indicated that the car had come out of the road at Stoker's place and swung to the left side of the road. He was positive defendant's car was on its side of the road, and was equally positive he observed in the damp gravel ploughed signs caused by young Boswell applying the brakes to his car immediately before collision. It is well here to note that young Boswell testified that he made no effort to stop his car before the collision and that the Nelms' car held its side of the road until within 4 or 5 yards of him, and then deliberately cut across the road and ran into his car. This witness is absolutely positive that he traced the tracks of the Ford car from the bridge to where it was after the collision. While doubtless he is sincere in his testimony and belief, yet we are unable to understand how this could have been done when considered in the light of the reversed position of this car after the accident, the disturbed condition of the gravel on the highway caused by the collision, and the many people who had gathered there and by cars passing. The tracks he traced from Walter Stoker's place were probably those made by Riley Stoker's truck, which did turn around there preparatory to the trip to Natchitoches with Nelms, after the accident. He is also positive he never discussed the case with either of the Boswells or their attorney, but finally admitted he told Judge Boone about the location of the glass in the road.

Mr. Harold Dees testified that he was present when his brotner Elden looked at the tracks with a flash light; that "he flashed the light around and looked down the road," but he (witness) "didn't remember about it." He could not remember anything about the tracks or the location of the broken glass.

Other witnesses on behalf of defendant to some extent, if not encirely, corroborate his testimony regarding the tracks of the cars. and the location of the shattered glass when he arrived on the scene.

The only evidence in the record tending to support the charge that Nelms, the deceased, was drinking when killed, is that of a deputy sheriff and one or two others, to the effect that the Ford car smelled of whisky. No evidence of liquor was found in or about the car. The witnesses. Dillard and Bryant state positively deceased had not been drinking during the day, and the men who carried him to the sanitarium did not smell liquor on his breath. They lifted him from his car into the truck and from the truck into the sanitarium and, therefore, had ample opportunity to detect the odor of whisky had he been drinking. Plaintiffs' counsel says the odor detected by defendant's witnesses was not that of whisky but of the camphor used by some ladies in bathing the head of deceased while in the car after being injured. We incline to accept this theory as being correct.

The testimony of the two occupants of the Ford car with deceased at time of the accident, if worthy of belief, certainly establishes carelessness and negligence on

the part of plaintiff's son in the operation of his car. There is nothing in the record to affect their credibility. That evidence fixes responsibility for the tragedy costing the life of plaintiffs' husband and father, and is to some extent corroborated by that of Walter Stoker and his wife, and by the position of the cars after the collision. These two witnesses (Bryant and Dillard) are positive defendant's car was coming at a very rapid speed, downgrade, zigzagging across the highway, some 20 feet wide, which was wet at the time, and struck Nelms' car while on his (right) side of the highway.

Defendant stresses the significance of the car tracks found about the place of the collision and the location of the shattered glass from both cars. When he saw the glass it had been scattered about the road intentionally. The man who scattered it said the bulk of the glass was originally on the Nelms side of the road. It is established by the evidence that there was glass on both sides of the center of the road, and that condition, to our mind, would have been a most natural consequence of the collision.

The evidence about the tracks of the cars has no real probative weight, for the reasons heretofore mentioned.

Syllabus 1 of Goldsby v. Lowrey, 6 La. App. 450, has peculiar application to the facts of the case at bar. It reads:

"Physical facts speak for themselves and are entitled to great weight in determining the circumstances connected with a collision between two automobiles on a public highway; but the conclusions of witnesses based on the examination of markings made by automobile tires on the graveled road are not sufficient to overcome the positive testimony of unimpeached witnesses who were present in the collision and testify to facts seen by them as they happened."

If the Ford car had crossed the road and jammed the Chevrolet, as stated by young Boswell, the position of the cars after the collision would have been different. The Chevrolet would most probably have gone into the ditch on its side of the road and the Ford left on the highway. Undoubtedly the cars were facing each other when they collided.

"Where the positions of the two automobiles after the collision corroborate the testimony of plaintiff's son that he was driving near the right hand side ditch when struck by defendant's car coming in the opposite direction on the wrong side of the road there will be judgment for plaintiff." Hoggatt v. Lampton, 11 La. App. 47, 123 So. 399.

"In an automobile collision where plaintiff had almost stopped his car on the right side of the road when defendant drove his car into him, although there was plenty room to pass, defendant was negligent and plaintiff was not negligent." Robinson v. Landry, 1 La. App. 517.

We have studiously considered the record in this case and have weighed the evidence with care because upon the correct resolution of the evidence hinges a proper judgment in the case.

Appellate courts are reluctant to reverse the findings of the trial judge on questions of fact and should not do so, unless after due consideration of such questions and of the evidence interwoven with them, it is obvious he has erred.

We have reached the conclusion that the judge a quo fell into error in reaching a decision in this case in that he allowed the circumstantial evidence to outweigh positive testimony. We are unable to conceive why plaintiffs' demand was rejected unless this is true.

It is our opinion, this unfortunate tragedy was caused by the carelessness and negligence of defendant's son, as charged by plaintiffs, and, of course, under article 2318 of the Civil Code, defendant is responsible for the consequent damages.

The deceased was 44 years old at his death and in good health. He had been married to plaintiff Mary Nelms 26 years. He left one child aged 7 years, one aged 10 years, and two aged 17 years. He owned no property when killed but was working in the oil fields at $4.50 per day. At times he received better wages than this. He is shown to have been a hard working man and rendered to his family the compensation earned by his labor. His two major children were not dependent upon him for support.

Plaintiffs sue and pray for judgment in globo for $15,000. Their situation is such that we shall have to make separate awards to them.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of Mrs. Mary Nelms, individually and as natural tutrix of her four minor children, named in her petition, and against defendant Grover C. Boswell, for the sum of $7,000, with legal interest thereon from judicial demand; one-half of said amount being awarded to Mrs. Nelms individually and the other half to her as tutrix of her said minor children. And it is further ordered, adjudged, and decreed that plaintiffs Edgar Nelms and Mrs. Bessie Honeycutt do each have and recover judgment against said Grover C. Boswell in the sum of $500, with legal interest thereon from judicial demand until paid; and that defendant pay all costs of this suit.