## DONALDSON v. RIDDLING'S SUCCESSION.

### ADAMS et al. v. SAME.
Nos. 4481, 4482.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 6, 1933.

Hawthorn, Stafford & Pitts, of Alexandria, for appellants.

Stephens & Gahagan, of Natchitoches, and Leo Gold, of Alexandria, for appellee Mrs. Johnnie Adams.

Thornton, Gist & Richey, of Alexandria, for appellee Mrs. Thelma Williams Donaldson.

TALIAFERRO, J.

These two cases grew out of a horrible accident on Sunday morning, May 22, 1932, on the concrete highway near St. Maurice, in the parish of Winn. W. P. Riddling, of Alexandria, La., his wife, and a lady friend, were riding in his Buick car, operated by a negro chauffeur by the name of John Henry Walker. Leslie M. Donaldson and C. W. Adams, in the Reo truck of the former, to which was attached a trailer, were returning from Franklin, La., with a load of sugar for a merchant in Shreveport when the accident happened. The truck and automobile were going in the same direction. The automobile, when passing, or attempting to pass, the truck on a downgrade, in some way not clearly disclosed by the record, in whole or part, crossed the path of travel of the heavily loaded truck and was rammed by it with such violent force that it (the car) was hurled into the ditch on the east side of the road, front end facing south, the direction from whence it came. The truck, partly on and partly off the concrete, turned, at an angle, against the car, and the trailer turned over completely. Instantly all the vehicles were involved in flames. The negro chauffeur extricated him-

self from the wreckage but Mr. and Mrs. Riddling and their lady friend were either killed outright from the impact of the collision or were burned to death in the car. Donaldson and Adams managed to get out of the truck, with assistance of Walker, with their clothes in flames. Both died during the day, and Walker died in a sanitarium in Natchitoches, after undergoing an operation that night.

Mrs. Thelma Williams Donaldson, widow of Leslie M. Donaldson, instituted suit against Mrs. Leola Hurn, administratrix of the succession of W. P. Riddling, deceased, to recover $15,000 damages for the death of her husband.

Mrs. Johnnie Adams, widow of C. W. Adams, individually and as natural tutrix of her four year old child, Mary Wayne Adams, issue of her marriage to her deceased husband, brought suit against said succession to recover damages in the sum of $20,000 for the death of the husband and father.

These cases were consolidated for trial in the district court and are in like manner before this court.

The charges of negligence against the deceased W. P. Riddling in both suits are practically identical. In substance these are: That the truck was being driven by Donaldson on its side of the highway immediately prior to and at the time of the accident, at a reasonable rate of speed; that the Buick car, driven by Riddling's chauffeur, with him on the front seat, attempted to pass on the left side of the truck, and while in the act of passing it suddenly swerved immediately in front of the moving truck, causing the truck to strike it, with the result hereinbefore stated. It is alleged, on information and belief, that as the car was passing the truck the said W. P. Riddling grabbed the steering wheel thereof and pulled the car suddenly across the path of travel of the truck, which act of carelessness and negligence was the sole cause of the accident; that the accident was either caused by this act of Riddling, or by the gross fault and negligence of his said driver, with or without Riddling's assistance. The accident and results are admitted by defendant. Negligence on the part of Riddling or his chauffeur is denied. Defendant avers that Leslie M. Donaldson and C. W. Adams were guilty of reckless driving of the heavily loaded truck and that this was the sole, direct, and proximate cause of the collision, or, in the alternative, proximately contributed to it, which contributory negligence is specially pleaded against the plaintiff's right to recover. The facts constituting this alleged negligence are not set out.

Judgment in the lower court went for the plaintiffs for the full amounts sued for. Defendant has appealed.

■ We have carefully studied the evidence in this case and are convinced that plaintiffs' theory of the cause of this lamentable tragedy is correct. The Buick car was traveling more rapidly than the heavily loaded truck and trailer. It attempted to pass the truck on a downgrade. The position of the vehicles after the collision argues strongly in favor of one or two things: (1) That as the car was about to clear the truck some part of it became engaged with some part of the front of the truck, thereby suddenly reducing the speed of the car and enabling the truck to ram it; or (2) that the car, coming from its extreme left side, undertook to regain the center or right side of the road abruptly and in doing so partially crossed the path of travel of the truck too close to escape contact with it. The first of these possibilities could have taken place in the doing of the second. The accident occurred as a result of one or both of these acts. In either case, the Riddling car would be negligent. Section 14 of Act No. 296 of 1928.

There were no eyewitnesses to the tragedy, save the occupants of the car and truck. Several persons a quarter of a mile distant heard the crash of the collision and immediately hurried to the scene. To some of these, and within a few minutes after the accident, Donaldson and Walker made statements explanatory of its cause. These statements were made while these injured victims were suffering intensely. There is also evidence to the effect that Adams also told some of the persons present how the accident happened. But to other witnesses he stated that he was asleep when the collision took place and did not know how it happened. None of the witnesses knew any of the parties in the accident. It is not unlikely that, in the confusion and excitement prevailing at the scene of the accident, when the witnesses were talking to the injured parties, that a mistake as to the identity of the one making the statements occurred. However, it is not material to a proper decision of the case to take into consideration the statements some of the witnesses accredit to Adams.

Mr. C. D. Willard was a quarter of mile from the accident. The smoke attracted his attention and he immediately hurried to the scene. Two other white man and three negro boys reached there before he did. Donaldson talked to him about the accident. The following is his testimony on the subject:

"Q. Did you talk to either Mr. Donaldson or Mr. Adams about how the accident occurred?

"A. No, sir, only Donaldson talked to me about it. Donaldson asked me to be sure and try to find out who them people were in the Buick, that he gave them all the road he could, and the right rear bumper on the

Buick hung the left end of the front bumper on his truck.

"Q. He told you to be sure to get the names?

"A. Yes, sir.

"Q. That he gave them all the road he could, and that their right rear bumper hung the left of his front bumper?

"A. Yes, sir.

"Q. Did he tell you that pretty soon after you got there?

"A. Yes, sir, about four or five minutes after I got there. As soon as I got him laid down, he asked me to be sure and find out who was in the car."

This witness says that Donaldson also referred to some money he had in his pockets. Witness was certain Donaldson well knew what he was saying.

To Mr. J. G. Hughes, Donaldson made substantially the same statement as he made to Willard. Mr. Hughes also lives one-fourth of mile away and hurried to the scene of the accident.

Walker also made a statement to this witness as to how the collision happened. In substance it is this: That he started to pass the truck, and saw another car coming towards him and the "only chance he had was a head-on collision or try to get between the cars" (the truck and car approaching).

Ivey Rogers, one of the colored boys reaching the scene first, testified that Donaldson said to him, or in his hearing:

"The accident would not have happened but that colored driver turned before him about three feet, and it were too late for him to put on the brakes but he put on his brakes anyhow and hit the back end of his car."

Mingo Brown, another of the colored boys, testified that Donaldson said to him:

"This colored boy ran around and got right in front of him and the front bumper of the truck hung the right bumper of the car. This caused the wreck."

Roosevelt Holmes, the last of the three colored boys reaching the accident first, stated that Walker, the Buick chauffeur, said: "His boss man was the cause of the wreck."

This witness also testified that one of the white men (either Donaldson or Adams) stated:

"That the colored fellow was in the wrong and caused the wreck. He say he cut over too short in front of him."

All of these statements by Donaldson and Walker were made within a few minutes, not exceeding ten, possibly, after the collision. Both were lying in the shade on the roadside, suffering intense pain from burns and wounds.

The admissibility of these statements was objected to by counsel of defendants on the grounds that they were hearsay only, and not part of the res gestæ. The judge of the trial court admitted the evidence subject to the objection, and in his judgment, after weighing the testimony as a whole, held the evidence to be admissible as part of the res gestæ. The objection made to the evidence in the lower court is urged in this court and we are asked to pass on it. We agree with the ruling of the lower court.

In the case of Lanis v. I. C. Ry. Co., 140 La. 1, 72 So. 788, 789, the court held:

"Evidence—Competency—Res Gestæ.

"A declaration by a person fatally injured in an explosion, uttered immediately after the explosion, under great excitement and under such circumstances as to preclude any design or falsification on his part, as to how the explosion occurred, is excepted from the general rule excluding hearsay or self-serving declarations, and is admissible in evidence as a part of the res gestæ."

In this case a boiler of the railway company exploded and the clothes of Lanis, an employee, were set on fire. Boykin and Webb, witnesses, were working a short distance away, and hurried to the scene. They asked Lanis how the accident occurred and he told them. Some four minutes, or about, elapsed since the explosion. In this opinion the court, replying to defendant's counsel's argument that the evidence was not admissible as part of the res gestæ, said:

"But the statements were so immediately connected with the accident and were made under such excitement and so soon after the explosion, that we must hold that they were admissible in evidence as a part of the res gestæ. See Wigmore, vol. 3, §§ 1746 to 1750; 16 Cyc. 1248."

The rule is the same in criminal cases. State v. Foley, 113 La. 52, 36 So. 885, 104 Am. St. Rep. 493; State v. Thomas, 30 La. Ann. 600, 602.

In the latter case the court said:

"It is not necessary that the declarations should be precisely concurrent with the act under trial; it is enough if they spring from it and are made under circumstances which preclude the idea of design."

In State v. Molisse, 38 La. Ann. 381, 383, 58 Am. Rep. 181, it is stated:

"If the acts or declarations are unconsciously associated with and relate to the homicidal deed, even though separated from it by a short time, they are evidence of the character of the deed and a part of the res gestæ."

The rule has been enunciated many times in other jurisdictions. We give below deductions or summaries from a few of the decisions:

"Voluntary and spontaneous acts and declarations springing out of and elucidating the

main fact, and so near it in time as to reasonably preclude the idea of deliberate design, are regarded as contemporaneous, and hence admissible as 'res gestæ.'" Simpkins v. State, 94 Tex. Cr. R. 456, 251 S. W. 1084, 1085.

"Statement of truck driver immediately after striking bicyclist, and while yet at scene of accident, that he was hurrying and didn't see boy until 'he was right on him,' held part of 'res gestæ.'" State ex rel. Smith v. Trimble, 315 Mo. 166, 285 S. W. 729, 732.

"Declarations made by one who has suffered injuries, as to how the accident happened, are admissible as res gestæ when made under stress of nervous excitement which stills the reflective faculties, and the time between the accident and declaration is so brief that it must be assumed a consideration of self-interest could not have been brought fully to bear by seasoned reflection." Panhandle & S. F. Ry. Co. v. Huckabee (Tex. Civ. App.) 207 S. W. 329, 330.

"Statement of injured engineer, shortly after injury and while still at scene thereof, telling how accident happened, held 'res gestæ,' which is verbal act accompanying accident and injury." Armour & Co. v. Industrial Commission of Colorado, 78 Colo. 569, 243 P. 546, 547.

"The fact that some time may have elapsed between the actual occurrence and the use of the language, the narrative of which is objected to, does not necessarily render it inadmissible as res gestæ, it being sufficient that they spring out of the occurrence to which they relate and are voluntary and spontaneous and made at a time not so far from the happening to which they relate as to preclude the idea of their being deliberate and designed." Lang Floral & Nursery Co. v. Sheridan (Tex. Civ. App.) 245 S. W. 467, 469.

■ The test of the admissibility of evidence offered as part of the res gestæ is not primarily the lapse of time between the event and the declaration of one involved therein, but essentially the test is whether the declarations offered are so related to the event in point of time and circumstances as to reasonably preclude the idea of deliberate design or fabrication. The declarations must be the apparently spontaneous utterance of a participant in the transaction or event, under such circumstances as to reasonably preclude the possibility of design, deliberation, or fabrication.

■ In the present case Davidson and Walker made declarations as to the cause of the accident, describing the position of the car and truck when it happened, immediately after they were extricated from the burning vehicles, and while they were under great mental excitement and experiencing intense physical pain. Only a few minutes had elapsed from the time of the collision. They were still at the site of it. Their condition was such as to exclude any idea of design, deliberation or fabrication.

■ Combining the declarations of Donaldson and Walker with the physical conditions after the collision, it is made quite clear that the truck was on its side of the highway when it rammed the car; that for some cause or reason, the car was too sharply pulled to its right to regain the center or right of the road to escape contact with the truck. It is probable the Buick car's left wheels were on the soft shoulder of the road, causing it to "wobble," and this fact prompted Mr. Riddling to grab the steering wheel. This, largely, is a matter of conjecture.

There is not in the record any evidence whatever tending to establish negligence on the part of Donaldson, who was driving the truck; nor on the part of Adams, who accompanied him. The bare charge of negligence in defendant's answer is the only intimation we have on this question.

■■ Defendant complains that the judgments are excessive. We think they are. The succession of Riddling is insolvent. Ordinary creditors will be paid only a percentage of the amounts due them.

We think the judgment in the Donaldson case should be reduced to $7,500 and that in the Adams case should be reduced to $10,000.

Donaldson was 27 years old when killed. Plaintiff, his widow, is the same age. They had no children. She testified that he was earning $150 per week, gross, by operating his truck, but was not regularly employed by any one. It is improbable that his income was this much regularly. It may have been at this rate when he worked. His life expectancy was 37.4 years. He left no estate.

Adams was 26 years old when he died, and had a life expectancy of 38.1 years. He lived six hours after being burned and suffered very much. He was earning $2.50 per day wages driving trucks. He had previously worked on highway construction jobs at $4.50 per day. He left no estate. His wife and child were dependent upon him entirely for support. Mrs. Adams sues for $10,000 for loss of the companionship and support of her husband, and for $5,000 for her minor child on account of the loss of companionship and support of its father, and for $5,000 for his suffering, after being burned.

■ There is no fixed rule governing the award of damages in cases of this character. Of recent years courts have been inclined to grant larger amounts than previously. This was due, in part, if not in whole, to the increase in living expenses, and the loss of purchasing power of the dollar. The purchasing power of the dollar now is very much greater

then it was three years ago. This should now be considered when fixing the amount of damages in any case.

The jurisprudence on the question of quantum of damages in death cases is reviewed at length by Judge Claiborne in Johnson v. Hibernia Bank & Trust Co., 5 La. App. 649. No good purpose would be served by again reviewing this jurisprudence in the present case.

In the more recent case of Nelms et al. v. Boswell, 17 La. App. 480, 136 So. 146, $7,000 was awarded the widow and children for the death of the husband and father, and in Kern v. Knight, 13 La. App. 194, 127 So. 133, the widow was given $6,000. In Locke v. Shreveport Laundries, Inc., 18 La. App. 169, 137 So. 645, $10,000 was given the widow for death of her husband. The amount of damages we shall award in these cases, we think, is in consonance with the jurisprudence of the state:

In these cases we are favored with a written opinion of the learned trial judge, who has correctly resolved the questions of fact involved.

For the reasons herein assigned, the judgment in favor of Mrs. Thelma Williams Donaldson is reduced to $7,500, and the judgment in favor of Mrs. C. W. Adams, individually, is reduced to $5,000, and the judgment in her favor as tutrix is also reduced to $5,000, and, as amended hereby, the judgments appealed from are affirmed.