## RIGBY v. ÆTNA CASUALTY & SURETY CO.

et al.

No. 4679.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1933.

Wilkinson, Lewis & Wilkinson, E. S. Klein, and Mabry & Carstarphen, all of Shreveport, for appellants.

Julius T. Long, of Shreveport, for appellee.

DREW, Judge.

Plaintiff filed suit against the Ætna Casualty Company and the Shreveport Plumbing Company, Chris H. Berg, and Harold O. Peterson, in solido, for damages for person-al injuries and damage to his car growing out of an automobile collision between the Ford coupé, driven by plaintiff, and a Ford truck, owned by the Shreveport Plumbing Company, and driven by one of its partners, Chris H. Berg.

Plaintiff was traveling north on Fairfield avenue in the city of Shreveport; defendant's truck was driving east on Jordan street. At the intersection of the two streets there is a stop light which regulates the traffic. When plaintiff reached the intersection, the "red" light was showing on Fairfield avenue; he stopped and waited for the light to change. When plaintiff stopped, there was a truck with a trailer then standing on his right, waiting for the light to change. When the light changed from red to yellow and then to green, plaintiff started across the intersection, and, having a lighter car, forged ahead of the truck, which had started about the same time. After plaintiff's car had passed the center and was nearly out of the intersection, it was run into and struck on the rear left wheel by the truck operated by defendant Berg. The accident occurred in the northeast corner of the intersection and at a place where defendant's truck had no right to be. Immediately after the accident Berg admitted liability, and that the accident was caused by his negligence.

When defendant's truck entered the intersection, it was on its right side of the street and, had it continued in its course, it would have struck the heavy truck following plaintiff's car. In order to avoid the truck, defendant Berg cut his truck sharply to the left, and therefore traveled in a direction from the southwest corner of the intersection to the northeast corner.

The physical facts are so clearly in plaintiff's favor that it is unnecessary to review in this opinion the other testimony, and in this court defendants admit negligence on the part of the driver of defendant's truck, in that he entered the intersection when the stop light which he was facing showed yellow. Their defense here is that plaintiff was guilty of contributory negligence, in that he likewise entered the intersection on a yellow light. It is incumbent upon defendants to prove the alleged contributory negligence, which they have failed to do. To the contrary, the evidence is conclusive that defendant's truck entered the intersection on a red light and after plaintiff's car had reached the center of the intersection, and defendants are clearly liable for the damages caused plaintiff. We have no difficulty in reaching this conclusion, and the only part of this case that gives us any worry is the amount of the award which plaintiff is entitled to receive.

Plaintiff, in his original petition, set out

and prayed for damages in the following amounts: First, for physical pain he has endured and will hereafter endure, $5,000; second, for mental pain, sorrow, and humiliation, since the accident and in the future, $5.000; third, for diminution of or loss of his earning capacity, or ability to make money, $24,500; fourth, for cost of repairs to his car, $67.45; ·fifth, for medicines, supplies, and equipment in being treated, for X-rays and physicians for examining and treating him up to the time of filing suit, and·that will· be necessary thereafter, $300; and sixth, for depreciation of the value of his car, $150.

In an amended petition, plaintiff alleged that the sum of $24,500 set out in the original petition for loss of earning capacity and ability to make money should be increased to the sum of $39,500.

The case was tried without a jury, and the judge of the lower court rendered judgment in favor of plaintiff in the sum of $30,-367.45; of said total $25,000 being for impairment of plaintiff's earning capacity, $2,-500 for physical pain and suffering, $2,500 for mental pain and suffering, and $367.45 to cover doctors' fees, medical expenses and equipment, and injury to the automobile.

On application for rehearing, the lower court, in a well-written opinion, gives its reasons for the award in the following language:

"This case is now before us on an application for a new trial and rehearing, as the result of a judgment for plaintiff in the sum of $30,367.45, of said total $25,000.00 being for impairment of plaintiff's earning capacity; $2500.00 for physical pain and suffering; $2500.00 for mental pain and suffering and $367.45 to cover doctors' fees, medical expense and equipment, and injury to automobile.

"Defendants' able counsel characterized the judgment complained of as being 'prodigious' in size, 'grossly excessive' and altogether without precedent in the annals of the First District Court.

### "As to Defendants' Liability.

"The defendants admit negligence on the part of the driver of the truck which collided with plaintiff's coupé, in the intersection of Jordan Street with Fairfield Avenue.

"It is contended, however, that Dr. Rigby was guilty of contributory negligence in that he entered the intersection on the yellow or caution signal, and having thus contributed to the accident, is barred from recovery.

"If shown to be guilty of the contributory negligence alleged in the answer, plaintiff would not be entitled to recover.

"No citation of authority is necessary, however, to support the proposition that the burden of proof is on the defendants to establish the contributory negligence relied upon as a defense. This burden the defendants have failed to discharge.

"While, as stated in the court's original oral opinion, there is respectable testimony in the record to support the plea of contributory negligence, the overwhelming weight of the testimony is to the contrary. And it may be added that two of the witnesses testified that the driver of the truck not only admitted he was to blame for the accident, but also admitted that the accident occurred while he was attempting to go through the intersection on a 'red light.'

"If the light on which the driver of the truck moved east on Jordan Street was red, the light on which the plaintiff moved north on Fairfield was bound to have been green. That plaintiff entered the intersection on a green light is also shown by the testimony of Frank Montgomery, Frank Havard and other disinterested witnesses.

### "As to Quantum of Damages.

"As to the quantum of damages to be allowed in such cases, no absolute rule exists by which a court can establish the amount to be allowed with the same exactitude that a salesman measures a piece of cloth with a yardstick.

"The rule for ascertaining impairment of earning capacity, in order to fix the quantum of damage in cases of this kind, is thus stated in 17 Corpus Juris, page 897: 'In general terms, the measure of damages for impairment of earning capacity may be stated to be the difference between the amount which plaintiff was capable of earning before his injury and that which he is capable of earning thereafter.' See, also, Hamilton v. Louisiana Ry. & Nav. Co., 147 La. 616, 85 So. 611.

"The testimony in this case shows that at the time Dr. Rigby received the injury complained of, he was 44 years of age, in good health, and that he was and had been during a four-year period earning from his profession annually not less than from $7500.-00 to $8000.00 net. Dr. Caldwell and Dr. Durham, as also did Dr. Garrett, testified that up to the time of the trial of the case the plaintiff's incapacity to practice his profession, resulting from the fracture of his backbone by the collision, was practically total.

"Dr. Hargrove, plaintiff's partner, who was out of the city following plaintiff's injury until sometime in December, testified that since December Dr. Rigby's incapacity had been not less than 75%.

"Dr. Caldwell, who has treated plaintiff since he was injured, Drs. Durham and Garrett all testified that with the most favorable recovery that could be hoped for, the plain-

tiff would still have a fifty per cent permanent incapacity to practice his profession, especially with reference to the performing of surgical operations.

"While plaintiff practices both internal medicine and surgery, his specialty is surgery and the testimony shows that as between the two branches, 60% of Dr. Rigby's practice is surgery and 40% internal medicine.

"So far as we are advised, the method adopted by the courts of this country for computing impairment of earning capacity is to multiply plaintiff's loss of earning for one year by the number of years he may reasonably have expected, but for his injury, to have continued to earn at the rate he was earning when injured.

"The plaintiff's life expectancy, as shown by the mortality tables compiled by and used by the life insurance companies in this country is 25 years. Leaving out of consideration the fact that at the present time, and according to the physicians, for a future period sufficient to round out about one year, the plaintiff is almost totally incapacitated, we find that by fixing plaintiff's incapacity at 50% of his earning capacity, that is, at $3750 per year, and multiplying this sum by his life expectancy of 25 years, he would be entitled to $93,750.00.

"Defendants' counsel appears to have been much aggrieved by the fact that in the course of our original oral opinion, we commented on the financial depression which has afflicted and chastened this country during the past three and one-half years, and especially by our comment that had Mr. Hoover been reelected and his policy of deflation continued for another four years, we would feel justified in awarding a judgment somewhat smaller than that about to be awarded. We further commented that although there has as yet been no inflation of the currency, in view of the wide powers recently vested in the President of the United States to control our currency, we felt justified in assuming that the period of depression and deflation through which the country has been passing was about to come to an end.

"The courts of this country generally have taken judicial notice of the present extraordinary financial conditions. Not to do so would be to ignore facts as obvious as the blowing of the winds or the shining of the sun.

"The jurisprudence of this State and of others contains cases which would serve as precedents for the award made by us in this case. But frankly, we arrived at the quantum awarded in this case by as careful study and consideration of the facts of this particular case as we are capable of giving them. Our difficulty was not in finding legal justification for awarding $30,367.45, but rather in finding legal justification for not making the award $40,000 or more. After the case had been tried, argued and briefed, and after we had read the briefs and reread the testimony of the medical experts who testified in the case, our first reaction on the question of quantum was to give the plaintiff judgment for $40,000.00.

"Liability in this case, of course, arises through that provision of law contained in article 2315 of the Civil Code, which reads: 'Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it.'

"It will be noted that the obligation imposed on him who is at fault is to repair the damage, not partially repair it. It is true the courts of this state have of necessity modified the strict literal interpretation of the words above quoted, by holding that where the amount of damages is great and the liability is small, the award should be modified accordingly.

"This rule of interpretation, however, has, in our opinion, no application to the facts in this case. The undertaking of the defendant insurance company is to protect the defendant plumbing company against liability for personal injuries resulting from the operation of the truck which struck plaintiff, up to the amount of $50,000.

"There is no dispute as to the ability of the Ætna Company to carry out its contract. If justified by proof of injury and damage to earning capacity, defendant insurance company at least has no just cause of complaint, so long as the award made is within the limits of its undertaking.

"If we have arrived at a fair and equitable award in this case, it makes little difference how we arrived at such award. Even if we erred in considering what might have been a proper award had the deflationary policies of the former federal administration undergone no change after March 4th last, that error has been much more than offset in defendants' favor (1) by discounting the testimony of the medical experts as possibly having been made unduly favorable to plaintiff's contention; (2) by giving weight to the fact that Dr. Hargrove has remained as plaintiff's partner and plaintiff is still enjoying in part the benefit of the earnings of Dr. Hargrove; and (3) by discounting the plaintiff's expectancy of 25 years without being able to point to any specific authority to justify discount.

"In the case of Hamilton v. Louisiana Ry. & Nav. Company, 147 La. 616, 85 So. 611, the Supreme Court awarded plaintiff, a woman 62 years of age, $15,000 for fracture of her wrists and injury to her hands. In that case the plaintiff had been earning about

$100 per month painting china. Her expectancy was about 12 years. The Court gave her the full benefit of her expectancy, and added $3000 for pain and suffering.

"In the case of Babin v. Sewerage & Water Board, 2 La. App. 517, that Court allowed the plaintiff, 24 years of age, who had been earning $20.00 per week, the sum of $25,000.-00, in addition to $5050.00 the plaintiff had already collected as compensation.

"In the case of Huggins v. Atlantic Coast Line Ry. Company, 96 S. C. 267, 79 S. E. 406, the Court upheld an award of $40,000 in the case of a locomotive engineer 35 years of age, who was earning from $150.00 to $200 per month. In this case it was found that the plaintiff was permanently disabled.

"On February 6, 1933, His Honor, Judge Taliaferro, speaking for the Second Circuit, Court of Appeal, in the case of Donaldson v. Riddling's·Succession, 145 So. 804, 807, said: 'The purchasing power of the dollar now is very much greater than it was three years ago. This should be considered·when fixing the amount in any case.'

"The present great purchasing power of the dollar is the final consideration which actuated us in refusing to go beyond $30,000 in this case, although the proof goes far beyond that sum.

"Counsel for the defendants complain that the award of $5,000 apportioned as being due for physical suffering and mental suffering violates the rule of uniformity which the courts have held should prevail in such cases.

"The proof shows that Dr. Rigby had already suffered and will in the future suffer much physical discomfort as the result of his fractured backbone. No amount of money really can compensate him for the physical discomfort already suffered and to be suffered.

"But great as his physical suffering may have been, it can be nothing as compared with the mental suffering already endured and to be endured as the result of having a brilliant and lucrative career as a surgeon wrecked at the age of 44. As a matter of fact, however, the apportioning of $5,000 to compensate for mental and physical suffering was purely arbitrary on our part.

"After as careful consideration as we are able to give this case, we came to the conclusion that no sum under $30,000 would adequately compensate the plaintiff for his injuries, considered all together.

"We thought and still feel that $30,000 judiciously invested under present conditions ought to make up for plaintiff's decreased earning capacity. Realizing, however, that the law requires an award in such cases to cover mental and physical suffering, we instead of adding $5000 to the award already determined upon, decreased our award for loss of earning capacity and apportioned that sum for pain and·suffering.

"We have gone somewhat into detail as to our own mental processes in arriving at the award made because counsel during the oral argument on application for rehearing seemed as much interested in the reasoning by which we arrived at the amount of our award as he did in the amount itself.

"Our very great respect for counsel's legal ability as well as our esteem for his high personal character, which we are sure would prevent his making a contention in which he was not sincere, have led us to a complete re-examination of the testimony in this case. We have discovered nothing as the result of our review of the case that would, in our opinion, justify any reduction in the award made.

"The application for rehearing and new trial are accordingly overruled.

"Robert Roberts, District Judge."

■ Plaintiff paid $67.85 for repairs to his automobile, and is entitled to recover that amount. He has not paid any amount for physicians' or surgeons' bills, and the record discloses that there has been no charge made against plaintiff by the physicians and surgeons who treated him, and that it is only in case defendants are forced to pay the bills that they will claim anything; it being a universal custom that one doctor will not charge another. There is no proof of any expense for medicines, etc., therefore, the items claimed for doctors' fees and medicines and equipment will have to be rejected. Since plaintiff is not charged for the services, he could not be damaged in an amount not claimed of him by any one and not charged against him.

■ Plaintiff is a reputable physician and surgeon practicing in the city of Shreveport. He is 44 years of age and has enjoyed a fine practice. His net earnings for the year 1928 were $8,556; for 1929, $8,275; for 1930, $7,272; for 1931, $8,030; and for 1932, the gross earnings of himself and partner were $13,896; the expenses were more than $3,000, leaving net earnings of about $10,500, of which plaintiff received 55 per cent., or $5,775.

The accident occurred on September 9, 1932, and plaintiff continued to carry on his practice until December 27, 1932, at which time he went to bed and remained until January 5, 1933. There is nothing in the evidence to indicate that the accident and injury caused any falling off in business during the year 1932, but that it was due to the general financial condition of the country.

The injury received in the accident was a crushing fracture of the twelfth dorsal vertebra, which fact was not known to plaintiff until December 12, 1932, more than three months after the accident. The first X-ray

soon after the accident failed to disclose the fracture, although plaintiff suffered with his back from the date of injury until the day of trial.

This case was tried in the lower court on March 2 and 3, 1933, and the evidence discloses that since December 12, 1932, plaintiff has been wearing a brace made of steel and leather to support his spine. He has lost little time from his office, and there have been no patients turned away because of his inability to treat them. However, he had turned over many patients to his partner that he would have ordinarily treated or operated on himself. We mention this fact for the purpose of showing that up to the time of trial, plaintiff's injury had not caused him any financial loss, due to the fine partner who had taken on extra work and gave to plaintiff the same percentage of fees he had received prior to the accident. There is nothing in the record to indicate that there is to be any change in the partnership arrangement, although there is no agreement to bind his partner to remain in partnership with him. It is a mutual agreement that could be discontinued by either at will, and it is not to be supposed that this arrangement would continue indefinitely, if plaintiff is unable to carry his share of the work. The arrangement between plaintiff and his partner was that plaintiff do all of the surgery that came to the firm and such part of the internal medicine practice as his time would allow. It is shown that his work consisted of 60 per cent. surgery and 40 per cent. internal medicine. However, it is not shown what part of his income came from surgery, as a good part of this work was done at the Charity Hospital and for which he received no pay.

Numerous surgeons testified that plaintiff was permanently incapacitated from carrying on his practice to the extent of 50 per cent., but a careful analysis of their testimony discloses that they were speaking of the surgical part of his work and not of the practice of internal medicine. Their testimony, as shown by it, was opinion, and not one of them would say it was not possible for plaintiff to be incapacitated not more than 15 per cent. The testimony of Dr. Durham, on cross-examination, explains what we take to be the true state of facts. It is as follows:

"Q. Now, doctor, the results of these cases where there has been a fracture of the twelfth dorsal vertebra is entirely problematical, are they not? A. I would not say entirely problematical, I think the end results vary a great deal.

"Q. And you cannot with definiteness state what the disability will be? A. We are guided by having had experience, and from our statistics in a large number of cases of this type.

"Q. You depend a great deal on statistics? A. We have to, yes.

"Q. In other words, one patient may recover while others don't. A. Yes, I think it rather rare for a case of this type to recover completely.

"Q. But the disability might be fifteen per cent. or ten? A. It varies, yes."

From this line of testimony we conclude that it is neither impossible nor improbable that the permanent injury and incapacity of plaintiff may be greatly reduced below 50 per cent. It is not contended that he cannot carry on the practice of internal medicine. He is fully qualified in that line of medicine, and it was only due to this particular arrangement he had with his partner that he was not doing more of that practice, coupled with his ambition to become a great surgeon. Plaintiff can take care of minor surgical cases and some major cases. The probability that he will have a partially stiff back will not incapacitate him for such work. He is far from totally incapacitated, and can yet earn a fine yearly income, making his case entirely different from one who, although only capable of earning a small salary, has been totally and permanently disabled from earning a livelihood.

There is nothing definite nor certain about the yearly earning power of a professional man. There are many things that cause it to vary. Nor is there anything more uncertain than the length of time a man is going to live. Plaintiff may live to be a 100, and might die next week, and while there are many cases that base the amount of the award in personal injury suits on the life expectancy of the individual, the great majority of the cases in our state do not. The award is almost always arbitrarily based on the facts of each particular case for the purpose of keeping the jurisprudence as nearly uniform as possible, and with an idea of doing justice to all parties concerned.

There can be no doubt about plaintiff being seriously injured. However, he drives his own car; he keeps his regular office hours of four hours a day, although he often has to lie down in the office, due to the pain he suffers. He has suffered much pain and will continue to suffer for a period of at least six months after the trial of this case in the lower court. No doubt he has mental suffering over the probability of being deprived of becoming a great surgeon, which was his ambition; all of which is lamentable, especially when his condition was caused through no fault of his own, but considering all of this, as well as his partial disability to perform all of his work, we are convinced that the award of the lower court is entirely out of line with the great preponderance of the jurisprudence of this state and will have

to be reduced. We think a just award and one that will do substantial justice to all concerned is a sum of $15,000 for pain and suffering, both mental and physical, and loss of earning power, and the award of the lower court for these items of damage is so reduced.

It therefore follows that the judgment of the lower court is amended by reducing the award to plaintiff from $30,365.45 to the sum of $15,067.45, with legal interest thereon from judicial demand until paid; and, as amended, the judgment of the lower court is affirmed; cost of appeal to be paid by appellee.